IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANE VINEYARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-00029-JPG-CJP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Diane Vineyard, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Ms. Vineyard applied for benefits in June 2012, alleging disability beginning on January 1, 1996. (Tr. 19). After holding an evidentiary hearing, ALJ Stephen M. Hanekamp denied the application for benefits in a decision dated August 21, 2014. (Tr. 19-34). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issue Raised by Plaintiff

Plaintiff raises the following point:

1. The ALJ ignored part of the opinion of Kirk Boyenga, Ph.D., calling for a more restrictive mental residual functional capacity.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[1] In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

In a DIB case, a claimant must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

>The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v.Astrue, 539 F.3d 668, 674* (7th Cir. 2008)(quoted in *Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011)).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant

does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Vineyard was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**The Decision of the ALJ**

ALJ Hanekamp followed the five-step analytical framework described above. He determined that Ms. Vineyard had done some work since the date of her application, but it did not rise to the level of substantial gainful activity. She was last insured for DIB as of March 31, 2000.[2]

The ALJ found that plaintiff had no medically determinable impairments prior to the date last insured. Since June 21, 2012, the date on which she applied for SSI, she had severe impairments of degenerative disc disease, osteoarthritis of the hands, bilateral carpal tunnel syndrome, COPD, depression and anxiety. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Vineyard had the residual functional capacity (RFC) to perform work at the light exertional level, with a number of physical limitations and one mental limitation. Her sole mental limitation was that she was limited to simple, routine tasks. She had no past relevant work. Based upon the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do jobs that exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff. Because plaintiff has not raised an issue related to her physical limitations, the Court will not summarize that evidence.

---

[2] The date last insured is relevant only to the claim for DIB.

1. **Agency forms**

Plaintiff was born in 1964 and was 47 years old when she applied for SSI. (Tr. 217). She said that she had stopped working in January 1996 because of her condition. (Tr. 220).

2. **Evidentiary Hearing**

Ms. Vineyard was represented by an attorney at the evidentiary hearing on April 15, 2014. (Tr. 60).

Plaintiff testified that she lived with her eleven-year-old child and her eighty-seven-year-old mother. Her mother was paralyzed on one side due to a stroke. Plaintiff's sister helped her take care of their mother. (Tr. 63-64).

She took medication for depression. She received mental health treatment at Southern Illinois Healthcare. She had just started seeing a psychiatrist there. Her depression was controlled with medication, but, if she did not take her medication, she cried all the time. (Tr. 72-73).

3. **Medical Records**

In September 2012, plaintiff saw Dr. Susan Lutjens, a primary care physician at Southern Illinois Healthcare, for the first time. She told Dr. Lutjens that she cried a lot and slept a lot. She denied suicidal thoughts, racing thoughts and paranoia. Dr. Lutjens recommended that she see a psychiatrist. (Tr. 482).

Neal Horowitz, Ph.D., performed a consultative psychological exam at the request of the agency in October 2012. He noted that her immediate and working memory was adequate, fund of information was mixed, concentration and calculation ability were good, abstract thinking was mostly intact, and social judgment was intact. He diagnosed depressive disorder, NOS, and

somatoform pain disorder.   (Tr. 473-474).

Ms. Vineyard had one visit with a psychiatrist, on August 29, 2013, on a referral from Dr. Lutjens.   Dr. Loynd diagnosed major depressive disorder and prescribed Celexa.   She also provided a referral for individual therapy, but there is no indication that plaintiff participated in therapy.   (Tr. 491-494).

### 4.   Mental RFC Assessment

In October 2012, Donald Henson, Ph.D., assessed plaintiff's mental RFC based on a review of the evidence in the record.   He used what appear to be electronic versions of the agency forms that are commonly used for this purpose in social security cases.   The first form is referred to as the Psychiatric Review Technique Form.   (Tr. 96).   On that form, he indicated that plaintiff had a moderate restriction in activities of daily living.   Dr. Henson also completed a Mental Residual Functional Capacity Assessment Form ("MRFCA form").   (Tr. 99-101).   The first part of this form consists of a list of mental activities.   The form instructs, "The questions below help determine the individual's ability to perform sustained work activities.   However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes."   (Tr. 100).   Dr. Henson indicated that Ms. Vineyard was "moderately limited" in the areas of "ability to carry out detailed instructions" and "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."

In the last section of the form, labelled as "MRFC-Additional Explanation," Dr. Henson typed in the following:

> She experiences some symptoms of depression secondary to her medical condition, without benefit of psychiatric or psychological treatment, which would adversely affect her ability to satisfactorily perform detailed

Page **7** of **13**

>activities of a somewhat complicated nature. Regardless, she performs chores and engages in leisure activities and possesses sufficient cognitive and attentional abilities to perform simple routine activities which are within the limits of her physical capabilities. Interpersonal skills and adaptive behaviors are adquate [sic] for vocational involvement.

(Tr. 100).

In February 2013, Kirk Boyenga, Ph.D., assesed plaintiff's mental RFC using the same forms. (Tr. 116-117, 120-121). Dr. Boyenga's reports are identical to Dr. Henson's reports, even down to the misspelling of "adequate" in the last sentence of the last section of the MRFCA form.

### Analysis

Plaintiff argues that the ALJ erred in failing to adequately consider all of the limitations found by Dr. Boyenga. Specifically, she argues that the ALJ ignored Dr. Boyenga's opinion that she was moderately limited in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."

The ALJ discussed Dr. Boyenga's opinion at Tr. 31. The ALJ essentially repeated the narrative remarks made by Dr. Boyenga in the "Additional Explanation" section of the MRFCA form, but did not mention that Dr. Boyenga found that plaintiff was moderately limited in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." ALJ Hanekamp said that he assigned "great weight" to Dr. Boyenga's findings and opinions. He did not mention Dr. Henson's reports at all.

Dr. Boyenga was acting as a state agency consultant in reviewing the record and assessing plaintiff's mental RFC. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability

claims under the Act." SSR 96-6p, at *2. The ALJ is required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) to consider the state agency consultant's findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision. *See McKinzey v. Astrue*, 641 F.3d 884, 891(7th Cir. 2011). Here, the ALJ gave Dr. Boyenga's opinion "great weight" and did not state that he rejected any part of his opinion.

Although he ostensibly credited Dr. Boyenga's opinion, the ALJ included only one mental limitation in his RFC assessment and in his hypothetical question to the VE, i.e., that plaintiff was limited to "simple, routine tasks." Tr. 81. The ALJ did not explain why he apparently rejected Dr. Boyenga's opinion that Ms. Vineyard was also moderately limited in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." This was error.

The Commissioner argues that the ALJ was not required to include the moderate limitations found by Dr. Boyenga in Section I of the MRFCA form. She argues that the first section is merely a "worksheet" and the ALJ was entitled to ignore these worksheet observations in favor of the "narrative RFC" set out in the last section of the form.

In making this argument, the Commissioner relies on *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015) and *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002), as well as two nonprecedential orders. *See* Doc. 23, pp. 6-7. In *Varga* and *Johansen*, the Seventh Circuit suggested that an ALJ does not err where he relies on the narrative RFC rather than the Section I findings where the narrative RFC adequately translates the section I "worksheet findings" in to the

RFC analysis.

In *Varga*, the state agency consultant checked the box to indicate that the plaintiff had moderate limitations in concentration, persistence or pace in Section I of the MRFCA form. In Section III, he wrote "see EWS," referring to an electronic work sheet which was lost by the agency. The Seventh Circuit explained:

> Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations. See *Johansen*, 314 F.3d at 286. But where, as here, no narrative translation exists—because of error on the part of the doctor or the agency—an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form, including those related to concentration, persistence, or pace.

*Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

The Commissioner's argument here glosses over the Seventh Circuit's clear statement that worksheet observations constitute medical evidence that cannot simply be ignored. Further, she pays insufficient attention to the Seventh Circuit's admonition that the ALJ can rely on the narrative statement in Part III only where it "adequately encapsulates and translates" the worksheet observations. *See also Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014).

The Commissioner makes no attempt to explain how a limitation to simple, routine tasks "adequately encapsulates and translates" a moderate limitation in in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Rather, she argues that the agency's own procedures, set forth in its Program Operation Manual Systems ("POMS"), dictate that Section I of the MRCFA form is merely a worksheet and is not the

actual RFC assessment. *See* Doc. 23, p. 5. This argument is not persuasive, for several reasons. First, POMS is an internal agency manual and not a duly-enacted regulation, and does not have the force of law. *Pulley v. Bowen*, 817 F.2d 453, 454 (7th Cir. 1987), citing *Schweiker v. Hansen*, 101 S.Ct. 1468, 1471 (1981). Secondly, the Seventh Circuit has already rejected a similar argument from the Commissioner: "This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE." *Varga*, 794 F.3d at 816. Thirdly, Dr. Boyenga himself failed to follow the directions in POMS for completing the MRFCA form. POMS DI 24510.063.B.2 requires that, when the state agency consultant has found that that claimant is moderately limited in any of the areas in Section I of the form, "The **degree and extent** of the capacity or **limitation** must be described in narrative format in Section III." http://policy.ssa.gov/poms.nsf/lnx/0424510063, visited on November 8, 2016, emphasis in original.

In his narrative RFC assessment, which appears to have been copied *verbatim* from Dr. Henson's earlier form, Dr. Boyenga made no reference to plaintiff's moderate limitation in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." He certainly did not suggest that a limitation to simple, routine tasks would accommodate such a limitation.

A limitation to simple, routine tasks invokes a limitation to "unskilled work," which is defined by regulation as "work that can be learned by demonstration in less than 30 days." *Varga*, 794 F.3d at 814. The record before the Court presents no reason to believe that a limitation to unskilled work adequately encapsulates and translates a moderate limitation in "ability to perform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."

The Commissioner argues that *other* evidence in the record supports the ALJ's RFC assessment. However, that argument completely misses the point. Regardless of whether there is other evidence in the record to support the ALJ's RFC assessment, the ALJ erred in failing to explain why he ignored Dr. Boyenga's opinion that Ms. Vineyard was moderately limited in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances."

The Court notes that plaintiff incorrectly argues that the vocational expert testified that such a limitation would preclude all unskilled work. *See* Doc. 16, p. 6. While plaintiff's counsel made passing reference to a limitation in "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," he did not ask the VE about the effect of such a limitation. Tr. 86-87. However, the Commissioner has not argued that the omission of that limitation from the RFC assessment was harmless.

In a nutshell, under binding Seventh Circuit precedent, the Section I observations on the MRFCA form are part of the medical records, and they cannot be simply ignored by the ALJ. However, *if* the psychological consultant has adequately translated his section I observations into a narrative RFC statement in Section III, the ALJ may rely on the Section III narrative RFC statement. Here, it is obvious that the narrative RFC in Section III does not adequately account for all of the Section I observations. Accordingly, the ALJ was not entitled to rely only on the Section III narrative and ignore the Section I observations.

Under the binding precedents of V*arga*, *Yurt,* and *Johansen,* this Court must conclude that the ALJ failed to build "an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC."  *Yurt,* 758 F.3d at 858-859.  Therefore, this case must be remanded.

The Court stresses that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Vineyard was disabled during the relevant period, or that she should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Diane Vineyard's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:** 11/21/2016

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**